Marvin, J,
The case of Gideon Carr v.The State of Ohio,in the court of common pleas, was a prosecution under an indictment in which there were two counts, each charging Carr with murder in the first degree. Upon a trial the jury found him guilty of murder in the second degree, and after motion for new trial was overruled, judgment was entered upon that verdict and sentence pronounced against Carr for that crime.
A petition in error is filed here, together with the bill of exceptions containing all the evidence, with a prayer that the judgment of the court below be reversed.
The case is this: On the 4th of May, of this year, in Copley township, in this county, one Sylvester Hull was killed, either by Gideon Carr, or by him and his son Edward Carr. There was a fight; on the one side were Gideon Carr and his son Edward, and on the other Hull, the deceased, and one Bratnley.
Gideon Carr and Edward Carr were jointly indicted for this killing and, as has already been said, each count in the' indictment charged murder in the first degree. Gideon Carr demanded a separate trial, which was, of course, granted, and it is the judgment in that case which it is sought here to reverse.
Gideon Carr set up as his defense that what'was done by him was in defense of himself or his sqn Edward, or both, from being killed or very seriously in jured by the deceased.
The plaintiff in error asked the court to appoint counsel to defend him. Edward Carr made the same request; and the court appointed to defend Edward Carr, Mr. Nathan Morse *45 of this bar, an experienced lawyer. Gideon Carr had asked to have Edwin E. Voris and Samuel G. Rogers, of this bar, both experienced lawyers, appointed. The court anounced that but one attorney would be appointed in each case that Mr. Morse would be appointed in the case of Edward Carr; and after some conversation between the court and counsel, the court appointed Mr. Voris to defend Gideon Carr,Rogers declining to take upon himself the responsibility alone of that defense. When the time came to impanel the jury,Mr, Rogers did not appear as counsel for the defendants, Judge Tibbals appearing, however, with the prosecuting attorney as counsel for the State,the court having announced that no appointment would be made of anyone to assist the prosecuting attorney of the county. It is said that Judge Tibbals was retained by friends of the deceased. In any event two experienced lawyers appeared on the part of the State, to-wit,the Prosecuting Attorney and Judge Tibbals. When, however, the case came on to be tried,Mr. Rogers appeared with the counsel for the defense, Mr. Morse appearing with Mr. Voris in the defense also. Objection was made on the part of the Prosecuting Attorney to Mr. Rogers participating as counsel for the defense, and the court finally decided, after a great deal of talking back and forth between counsel and the court, that Mr. Rogers would not be recognized as counsel for the defense, and it is urged that there was error to the prejudice of Carr in the holding of the court in that regard.
It was doubtless a matter of discretion with the court whether Mr. Rogers should be recognized as counsel for the defense, and it was urged upon the court that as the jury was impaneled without any knowledge that Mr. Rogers was to appear, the State had not, or might not, have exercised exactly its challenges as it, would have done if it had known that Rogers was to appear. Mr. Rogers stated to the court, however, that he was not attorney for any of the members of the jury, nor rélated to any, but the court, in the exercise of its discretion, said that Mr. Rogers would not be recognized as counsel.
We are not satisfied that there was such an abuse of that discretion as would justify a reversal on that ground, and that being true,no reversal will be made upon that ground.
*46 Again, it is urged there was error on the part of the court in its ruling upon the introduction of evidence,and that one of the errors in that regard grew out of this state of facts.
The State had introduced its evidence in chief, and rested.
The prisoner introduced his evidence and rested, some of the evidence of the prisoner tending to show that what he did was done in defending himself, or his son, or both of them, against an attack made by Hull upon them. Nothing, however, was shown, or attempted to be shown by the prisoner as to the character or reputation of the deceased for peaceableness or the contrary. It was, however, shown that he was a large and strong man.
The State then, in rebuttal, introduced David Bunn as a witness, and, among other things, asked him if he had the means of knowing the general reputation of the deceased in the neighborhood in which he, the deceased, lived as to peaceableness and quietness, To this the witness answered in the affirmative, He was then asked this question, as appears on page 35 of the bill of exceptions, “What was that reputation, good or bad Objection was made to this question; that objection was overruled, and the proper exception taken, and the witness then answered “Good”. Other witnesses to the same effect were introduced on the part of the State, among them Theodore Patrick, Milton Thompson, John F, Moore, C. 0, Frederick and Newman Adair. As to the question raised upon each of these witnesses counsel for plaintiff in error urges that the ruling of the court was wrong, and the evidence permitted to be given was prejudicial to the prisoner.
Perhaps, it is not claimed on the part of the State that the evidence elicited on this subject was not to the prejudice of Carr if it was not competent, but it is urged that such evidence is entirely competent.
In argument it was said that this evidence was properly in rebuttal of what the prisoner had introduced on the defense as to Hull’s being a large, strong man. It would seem that the way to have rebutted that would have been to show that the fact was otherwise; that he waB not a large, strong man. Evidence that he was a quiet, peaceable man would have no tendency to show that he was not both large and strong.
*47 The only authority to which the attention of the court has been called in support of the ruling of the court in this regard is a case decided by the Supreme Court of Indiana, Thrawley against The State, found in 55 N. E. Reporter, page 95. The eighth clause of the syllabus in that case is •directly in point, and reads: “Where the defendant testified that he killed deceased in self defense while the latter was •committing an apparently felonious assault on him,the prosecution may, without defendant’s consentj and though no ■evidence has been introduced against deceased to show that his reputation for peaceableness is bad, show that deceased had the reputation of being a peaceable man.” And in the opinion, on page 98, the court gives the reasons for that holding, and quotes from two other cases in Indiana, one of which distinctly holds aB the court held in this case, and the other seems so to hold, though it is said in the opinion that the record is not so complete as to show how the question arose in that case,
On the other hand, authorities are so numerous as to seem to justify the statement of counsel for the plaintiff in error that the Supreme Court of Indiana is alone in holding such •evidence competent when the character of the deceased for peaceableness has not been attacked by the defendant.
In the case of the State of Kansas against Isaac Potter, found in the 13th Kansas Reports at page 414, the first clause of the syllabus reads: “On a trial for murder it is error to permit the state in the first instance and as a part of its case to offer testimony showing the character or reputation of the deceased as a quiet and peaceable man.” And Judge Brewer, now a justice of the Supreme Court of the United States,in the opinion,gives he reasons for that holding. Among other things,this is said: “Again, he insists that the court erred in allowing the State to introduce evidence of the character of the deceased as a quiet and peaceable man. It appears that the.deceased was killed in an •affray; that this was the second quarrel upon he same afternoon between the deceased and the defendant, others participating. ” Further on this language is used: “On the trial,and before closing their case, the prosecution was permitted, over,objection, to ask witnesses, who had testified that they knew the deceased, this question: ‘State if you *48 knew hie general reputation for being a peaceable,quiet and' law abiding citizen’, and the witness testified he was a peaceable, quiet, law abiding man. No attack was made by the defendant at any time during the trial on the character of the deceased, and no attempt to show that he was a quarrelsome or turbulent man. The question then is fairly presented whether the prosecution on a trial for murder may, in the first instance and as a part of their case, show the character and reputation of the deceased. We do not understand counsel for the State was claiming that such testimony is admissible in all rases, but only in cases where there is a doubt as to whether the killing was done in self defense, and where such testimony may serve to explain the conduct of the deceased and is, therefore, fairly a part of the res gestae. In such cases it is said that the' authorities hold that the defendant may show the bad character and reputation of the deceased as a turbulent and quarrelsome man.” A considerable number of authorities are cited in support of' that. ‘‘And if the defendant may show that the deceased was a known quarrelsome, dangerous man, why may not the State show that he was a known peaceable, quiet citizen ? The argument is not good. The books are full of parallel cases. The accused may in some cases show his own good character, but the State can never,in the first instance, show his bad character. A party can never offer evidence to show a witness’s credibility until it is attacked. The reasons for these rules are obvious. Such testimony tends to distract the minds of the jury from the principal question, and should only be admitted when absolutely essential to the' discovery of the truth. Again, the law presumes that a witness is honest; that a defendant has a good character, and that a party killed was a quiet and peaceable citizen, except so far as the contrary appears from the testimony in this case,and this presumption renders it unnecessary to offer any evidence in support thereof. No authorities have been cited sustaining the admission of such testimony.” ,He then' cites a number of cases, which be says, are in point on the' holding made by the court. To the same effect is the case' of Parker against the Commonwealth, decided by the court, of appeals of Kentucky, found in 28 Southwestern,page 500;: State against Eddon, 36 Pacific 139, a case from the Sup-
*49 reme Court of Washington. It is true that in that case two of the judges dissented from the opinion, and give the same reason substantially in the dissenting opinion that are given by the Supreme Court of Indiana in the eases already referee! to for the holding in those cases. The case of People against Bezy, Supreme Court of California, found in 7th Pacific, page 643; The text books, Kerr’s Law of Homicide, section 420,and the authorities there cited; section 423 Me Chain's Criminal Law, and the cases there cited, are all to the same effect. But if it be said that this was not offered by the State in the first instance, wbat has already been said in this opinion seems to answer that, that it was not in rebuttal of anything which bad been shown on the part of the defense. The defense had made no attack upon the character of the deceased as to peaceableness and quietness.
Our own Supreme Court,in the case of Blakeslee against Hughes and others, 50 Ohio S., 490, hold, in a civil casein action for libel: “Where the defense was justification, on the trial of the action in the court of common pleas, that court, over the defendant's objection, permitted the plaintiff to give in chief to the jury evidence of his good character. The circuit court,solely on account of this ruling of the court of common pleas,reversed the judgment and remanded the cause for a new trial, and the circuit, court did not err”, says the supreme court. And the reasons — the opinion isa very short one — ■ but the reasons given substantially are as the reasons given in the authorities which have already been cited in the criminal cases, the presumption that the character of the party injured was good without any evidence on that subject, and that to undertake to strengthen that by evidence on that subject when that character has not been attacked; is to the prejudice of the party against whom it is introduced.
We think there was clearly error in the admission of this evidence, and that such error was prejudicial to the prisoner, and that for that error the case must be reversed. •
It is urged on the part of the plaintiff in error that there was error on the part of the court in its charge to the jury when it was said, “On the trial of an indictment for murder the burden of proof that the homicide was excusable on the ground of self defense rests on the defendant, and must be *50 established by a preponderance of the evidence, so that under the law as laid down by the Supreme Court in this state, where it is sought to excuse an act of killing on the ground of self defense,it is incumbent upon the defendant to show it by a preponderance of the evidence. That is fully sustained by the holdings of the Supreme Court in this state,and is distinctly stated in the syllabus, of which there is but one clause, in the case of Sylvus against the State, 22 Ohio St., 90. There was no error in that part of the charge.
It is urged that there was error in this language used by the court in the charge. “The law presumes that a rational man, being free to choose and capable of choosing between right and wrong,intends the natural consequences of his act. The purpose or intent to kill in general is proved by the circumstances, by what the party does and says, the manner of inflicting the wound, the instrument used, and its tendency to destroy life; if palpably calculated to take life it may be presumed.” We think there is no error in that. The language used by the court is fully justified by the decisions of the Supreme Court in this state,and by numerous authorities.
But it is said that there was error in the part of the charge in which the court said, “If the appearances were such as would have alarmed a man of ordinary firmness and would have impressed him that such danger was imminent, and if the assailed party honestly believed such to be the case,it is not material whether the danger was real or not; the condition of the assailant must be such as to render it necessary on the part of the killer to do the act in self defense. The attack must have been such as in the belief of the defendant rendered the taking of the life of the deceased in his defense necessary. The slayer cannot urge in justification the necessity produced by his own fault.” We find that the court made no error in that part of the charge. We find that this language distinctly states the law as it it is. There was no error in that regard.
In another part of the charge this language is used, and it is complained of by the plaintiff in error as being prejudicial and erroneous. “You must be satisfied that Hull manifestly and maliciously intended and endeavored to kill or do great bodily barm to the defendant, Gideon Carr, or *51 to his son, Edward Oarr, or to one of them. Did Hull do that; and in doing it, was he actuated by malice, or was he simply defending himself, trying to save himself from bodily harm? These are questions for yóur determination.” Perhaps, it is not claimed on the part of the State that the language used alone properly states the law. It seems clear that the language is: ‘‘You must be satisfied that Hull manifestly and maliciously intended and endeavored to kill or do great bodily harm.” In other parts of the charge, and immediately following this, the court gives the correct rule, but this language says to the jury, ‘‘You, the jury, must be satisfied that Hull manifestly and maliciously intended and endeavored to kill or do great bodily harm.” It is claimed by the plaintiff in error that the jury need not be thus satisfied If Carr believed upon good ground that Hull manifestly and maliciously intended and endeavored to kill him, and that his danger was so great, or that of his son, that he must do what he did, that that would be sufficient. We thiuk that is clearly the law. As has already been said, the true rule was given in more than one part of the charge. In several places in the charge the court gave the true rule, but will it do to say, in a criminal case, that where the court gives more than one rule for determining the rights of the accused, we must presume that the jury followed the right and not the wrong rule? We don’t understand that to be the law, nor do we find any such qualifications of this statement as makes it conformable with the law as it should have been given, and for this language of the court the case would have to be reversed.
Again, the court used this language: ‘‘You must be satisfied that the killing of Hull was the only means of escape from the danger mentioned.” Now, that by itself clearly is not a true statement of the law. It was not necessary that the jury should be satisfied that the only way that Carr could escape from Hull was by killing him. If Carr honestly believed and had proper grounds for that belief that the only means of escaping from Hull was to inflict upon Hull what he did inflict upon him, then Carr may be excused from doing what he did. And we think there was error in that language of the court for which the case would have to be reversed.
*52 It is urged on the part of the plaintiff in error that the court again erred in this language used to the jury: “However, as I have stated, in such case he must act bona fide and honestly, and'that the appearance and nature of the attack and assault upon his son were such as to justify him in the belief that he or his son were in danger of death or great bodily harm,’’ Now, it is urged that the word “justify’’ is too strong a word there that if he honestly believed that he or his son were in such danger, he might be excused but is not justified in such belief. Critically that may be true, but certainly it is not an uncommon thing,even among members of the legal profession, to use the word “justify” where Biackstone uses the word “excusable.” Blackstone says there are three degrees of homicide, justifiable, excusable and felonious, and makes the distinction between justifiable and excusable, and perhaps technically the word “excuse” instead of “justify” would have been the proper word; but it is not to be supposed that the jury would be mistaken or misled by the use of the word justify rather than excuse, and we find no such error in that part of the charge as would justify a reversal,
But it is said that this language used by the court in its charge to the jury is erroneous: “Gentlemen, where self defense is claimed and a homicide is sought to be excused on the ground of self defense, it implies, it presupposes, that the deceased was intentionally killed, and where the defense is that it was "done by reason of attack and assault made by the deceased, and he, the defendant, did what he did in danger or apprehension of death, or of great bodily harm,it is then a defense to be proved by the defendant. And the rule, I think, is stated here in this case, and I read the syllabus of the case which reads,as to the last part of that language, “That the burden is upon the defendant to show his defense that what he did was in self defense”. But it is the first clause that is especially complained of. The latter part of this has already been spoken of in this case. “Where self defense is claimed and the homicide is sought to be excused on the ground of self defense, it implies, it presupposes, that the deceased was intentionally killed.” With what we know of the case of Elliott against the State, 26 W. L. B., 116, we should not be justified in *53 reversing this case for that language of the court. The Elliott case is not reported in the. reports of the decisions of the supreme court, but we know what was said by Judge Pugh in the trial of that case, and the language was possibly stronger than this. The case was affirmed by the supreme court. Of course,that case had such notoriety that the general facts in regard to it are very well known. Whether the facts, however, as they came out in .the trial, were such as to relieve from any prejudice by the 'use of that language and on that ground the case was affirmed, is not clear. It strikes certainly a majority of the court as an extraordinary proposition to be allowed to stand, but, as has already been said, we would not feel justified, in view of the Elliott case, in reversing on that ground.
E. E. Voris and Nathan Morse, for Plaintiff in Error.
B. M Wanamaker, Pros. Att’y. and N. D. Tibbals,for Defendant in Error.
The judgment of the court below is reversed for the errors stated in this opinion,and formo other, and will be remanded for further proceedings in the court of common pleas.
Mr, Voris — Does the court pass upon the question of the ■admission of testimony showing whether there was a right or not?
The Court — >We hold there was no error. We have not discussed all of the propositions raided, but we find no error except such as have been pointed out'in this opinion.